UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| NORTHWEST BYPASS GROUP, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 06-CV-00258-JAW |
| | ) | |
| U.S. ARMY CORPS | ) | |
| OF ENGINEERS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON PLAINTIFFS' MOTION FOR SANCTIONS AND MOTION TO DISQUALIFY COUNSEL

Morton and Carolyn Tuttle move for sanctions against the City of Concord, alleging the City engaged in potential violations of criminal law and breached its contractual duty of good faith and fair dealing. The Tuttles also move to disqualify the City's attorney from representing Martha Drukker, a city employee. The Court concludes the Tuttles' motions are ill-founded, and denies them, reserving for later whether, and the extent to which, it should impose sanctions against the Tuttles and their counsel for filing the motions.[1]

## I.    STATEMENT OF FACTS

### A.    Procedural History

On March 18, 2007, the Tuttles filed a strongly-worded motion requesting the Court to sanction the city of Concord. *See Pls.' Mot. for the Imposition of Sanctions for the City of Concord's Bad Faith Tactics Constituting Obstruction of Justice* (Docket # 107) (*Pls.' Mot.*). In response, the City characterized the Plaintiffs' motion as "without merit and demanded its

---

[1] Technically, the motions were filed by all the Plaintiffs, including Northwest Bypass Group, the Tuttles, and Leslie J. Ludtke; however, the motions relate to conduct only between the City and the Tuttles and the Court is treating the dispute as being between them. It seems inappropriate, for example, to impose a sanction against Ms. Ludtke, despite the fact these motions were filed in part in her name.

counsel fees. *See Def. City of Concord's Obj. to Pls.' Mot. for the Imposition of Sanctions* at 2 (Docket # 111) (*City's Obj.*).   Although the Tuttles do not seek sanctions against the United States Army Corps of Engineers (Corps), the Corps objects to the motion, since one of the proposed remedies is a default judgment against all defendants. *See Federal Defs.' Resp. to Pls.' Mot. for Imposition of Sanctions Against the City of Concord* (Docket # 112).[2]

Following the filing of the motion for sanctions, the Tuttles filed an additional motion asking the Court: (1) to disqualify the City's lawyer from representing Ms. Drukker; and, (2) to strike Ms. Drukker's affidavit.   *See Mot. to Disqualify the Def. City's Counsel from Representation of Ms. Drukker and to Accordingly Strike the Aff. of Martha Drukker* (Docket # 114) (*Pls.' Mot. to Disqualify*).   After the City filed its objection, Plaintiffs replied. *See Pls.' Mot. for Leave to File Reply to the Def. City of Concord's Obj. to Pls.' Mot. to Disqualify* (Docket # 116) (*Pls.' Reply*).[3]

### B.   Local Rule 7.1 and Judicial Notice

The Tuttles did not file an affidavit in support of their motion, as required by the Local Rules.  *See* LR 7.1(a)(2) ("Every motion and objection which require consideration of facts not in the record shall be accompanied by affidavits or other documents showing those facts. ).  Because the Tuttles allege facts outside the record, they should have filed an affidavit to comply with the rule.  Instead, they ask the Court to take judicial notice of three newspaper articles from the *Concord Monitor*, the Tuttles' acquiescence to the City's proposal to relocate the Tuttle House to a site on Rockland Road, a copy of an e-mail from Peter Clary, an engineer, to Martha Drukker, a copy of the minutes of the Concord Zoning Board of Adjustment (ZBA) meeting for January 3, 2007, copies of Ms. Drukker's handwritten notes of the January 12, 2007 conversation

---

[2] Plaintiffs moved for leave to file a reply to the City's opposition. *Pls.' Mot. for Leave to File Reply to the Def. City of Concord's Obj. to Pls.' Mot. for Sanctions* (Docket # 113).  The Court GRANTS the Plaintiffs' motion.
[3] With respect to the motion to disqualify, the request for leave to file a reply is GRANTED (Docket # 116).

with Mr. and Mrs. Tuttle, and a copy of a letter dated February 6, 2007 from Attorney Kinder to Attorney Blakeney. Ms. Drukker's handwritten notes are attached to her affidavit in the City's filing and, therefore, the Court will consider them.

The City has a valid point on the Tuttles' failure to comply with the Local Rule's affidavit requirement. Presumably, the Rule's purpose is to avoid placing evidence before the Court by motion that could not be admitted at trial. Further, the affidavit requires an oath and, thereby, encourages accuracy. The most obvious sanction would be to exclude unattested documents from consideration. Here, however, the Plaintiffs' attachments are either newspaper articles or government records, the essential accuracy of which has not been challenged. Because the documents are what they purport to be, to sanction the Plaintiffs for the failure to comply with the Local Rule appears disproportionate. At the same time, the Court reminds counsel that the Rule exists to be followed.

The Plaintiffs also request the Court take judicial notice of its attachments. To be subject to judicial notice, the fact must be "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. FED. R. EVID. 201(b); *see Lussier v. Runyon*, 50 F.3d 1103, 1105-06 (1st Cir. 1995) ("Courts have tended to apply Rule 201(b) stringently . . . . ). Nevertheless, depending on the content, facts reported in newspaper articles may be considered "generally known. *See* 1-201 WEINSTEIN'S FEDERAL EVIDENCE § 201.11[2]; *compare Cofield v. Alabama Public Serv. Comm'n*, 936 F.2d 512, 517 (11th Cir. 1991) ("That a statement of fact appears in a daily newspaper does not of itself establish that the stated fact is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' ); *Fant v.*

*Residential Servs. Validated Publ'ns*, 1:06-CV-00934-SMS, 2007 U.S. Dist. LEXIS 23010 (E.D. Cal. Mar. 16, 2007); *with Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458 (9th Cir. 1995).

In the absence of the City's objection to the content of the attachments, the Court has considered only those facts that appear undisputed, such as that the Concord ZBA held a hearing and denied the Rockland Road variance on January 3, 2007. Similarly, as the City did not object to the genuineness and accuracy of the ZBA minutes or the letter from City's counsel dated February 6, 2007, the Court will consider those documents. The Court will not, however, take judicial notice of the contents of the e-mail from Peter Clary, a private engineer, to Ms. Drukker, since it does not, under any measure, fit within the requirements for judicial notice.

### C.     The Factual Background of the Motion

Morton and Carolyn Tuttle live together in the historic Tuttle House, a property eligible for listing on the National Historic Register and located in the path of the Northwest Bypass, a proposed road in the center of Concord that has been the source of intractable and extensive litigation. Martha Drukker, an Assistant City Engineer, has been employed by the city of Concord since 1989 and has been Project Manager of the Northwest Bypass Project since 1990. *Aff. of Martha Drukker* ¶¶ 1, 2 (Docket # 111-2) (*Drukker Aff.*). Over the last ten years, Ms. Drukker has had "numerous conversations with the Tuttles about the eventual relocation of their house; she characterizes those conversations as "friendly. *Id.* ¶ 3. Ms. Drukker has engaged in an extensive search for alternative lots where the Tuttle House could be relocated and the City has presented "19 lots to them for consideration. *Id.* ¶ 5. In 2002, the City focused on a potential lot located at Gabby Lane. *Id.* ¶ 7. The Tuttles initially liked the lot, but later decided it was not acceptable.[4]  *Id.*  The City, the Corps, and the State Historic Preservation Office

---

[4] The Tuttles say that they found the Gabby Lane lot unacceptable only after the City proposed to significantly reduce the size of the lot, which preceded the City's actual acquisition of the property. *Pls.' Reply* at 1-3.

continued to consider the Gabby Lane lot acceptable and the City not only ended up purchasing the lot for $95,000.00 on October 10, 2002, but also signed a Memorandum of Agreement (MOA) incorporating a requirement that the City move the house to the Gabby Lane lot. *Id.* After the lot size for the Gabby Lane parcel was reduced, the Tuttles no longer wished to move there and they never signed the MOA.

After the Tuttles initiated this federal lawsuit in July 2006, the City continued to consider other lots that might be acceptable to the Tuttles. *Id.* ¶ 9. In October, 2006, the City located a site at Rockland Road that the Tuttles seemed to like and although the lot required zoning variances, the City agreed to pursue approval with the ZBA. *Id.* ¶ 10. On January 3, 2007, after a public hearing during which there was considerable public criticism of the City's efforts to accommodate the Tuttles, the ZBA denied the City's request for a variance. *Id.* One of the areas of public criticism was that the City had continued to look for alternative lots for the Tuttles when it had already purchased what it had considered to be a suitable lot. *Id.*

On January 12, 2007, Ms. Drukker telephoned Mr. and Mrs. Tuttle to tell them what had happened at the ZBA hearing and to explain that the Rockland Road alternative was "not going to work and probably Gabby Lane was going to be the only practical alternative. *Id.* ¶ 11. Ms. Drukker further told the Tuttles that the City "might not want to pursue other lots given the public concerns expressed at the variance hearing about the expense of acquiring another lot, the project schedule, and the rising expenses of the pending litigation. *Id.* She emphasized that she "did not know what the Council would or would not authorize regarding continuing efforts to find another lot, but said that it "might not authorize additional efforts to find another lot. *Id.* ¶ 12. She reported that the Tuttles "seemed to not understand that they were suing the City and

said they had not authorized the suit and that Mr. Blakeney did not represent them . . . . *Id.* ¶ 13.

On February 6, 2007, Tupper Kinder, the City's lawyer, wrote to Gordon R. Blakeney, the Tuttles' lawyer, and asked for clarification as to whether Mr. Blakeney was "authorized to represent Mr. and Mrs. Tuttle in this pending federal court litigation.[5] *Pls.' Mot* Ex. 8. On February 22, 2007, Mr. Blakeney responded, requesting that "the City immediately cease and desist all direct contact with [the Tuttles] regarding this matter, and henceforth deal strictly through [him]. *Pls.' Reply* Ex. 2. The City's attorney subsequently advised Ms. Drukker of Mr. Blakeney's request, and she has not spoken with them since. *Drukker Aff.* ¶ 17.

### D.    The Tuttles' Motion for Sanctions

On March 18, 2007, the Tuttles filed a motion for sanctions against the City, alleging it had engaged in bad faith tactics constituting obstruction of justice. The gist of the motion is that the City – through Ms. Drukker – had contacted the Tuttles, whom it knew were represented by counsel, and pressed them to drop their participation in the federal lawsuit in exchange for the City's willingness to continue to seek other relocation options for the Tuttle House. Further, the Tuttles allege that Ms. Drukker's statements were not only a violation of the City's obligations under the MOA, but were unauthorized. Finally, the Tuttles claim that Ms. Drukker's actions constituted criminal obstruction of justice or were part of a conspiracy to obstruct justice.

The Tuttles request one or more of the following: (1) a judicial determination that the City "acted unfairly and in bad faith and breached its contractually implied covenant of good

---

[5] Mr. Blakeney has not always been the Tuttles' attorney in their discussions with the City. The Administrative Record reveals that as early as October 6, 2000, Ms. Drukker met with the Tuttles and their attorney, Kevin Leach, to discuss the Northwest Bypass project, AR at 3:57-58, and on January 25, 2001, Ms. Drukker copied Attorney Leach in correspondence concerning the Tuttle House. AR 3:47-52. She continued to correspond with Mr. Leach at least as late as March 17, 2004. AR at 3:25-27. At the latest, Mr. Blakeney assumed representation of the Tuttles in the summer of 2006 when he filed the pending lawsuit on their behalf.

faith and fair dealing with respect to the Tuttle plaintiffs, and/or a finding and declaration that the Defendant City corruptly and/or in bad faith attempted to obstruct, influence, or impede this judicial proceeding;  (2) rescission of the order denying the Plaintiffs' motion for preliminary injunction, and issuance of a preliminary injunction against the City; (3) a "partial form of the remedy . . . whereby the preliminary injunction, once issued, could be dissolved at the request of the Defendant City, with the Tuttle plaintiffs' consent;  (4) a finding and declaration that the City caused the Tuttles emotional distress and a corresponding award of compensatory damages to the Tuttles; (5) a fine payable to the United States Treasury;  and, (6) an award of attorney's fees to the Plaintiffs. *Pls.' Mot.* at 12-13.  The Plaintiffs suggest that a referral to the United States Attorney or to the Federal Bureau of Investigation might also be in order. *Id.* at 13.

### E.     The City's Response

The City responded by describing the Tuttles' allegations as "wildly inaccurate and unsupported by any legal precedent.  *City's Obj.* at 2.  In addition to supplying the Drukker affidavit, the City also noted that the Tuttles filed their motion nine days after the City began the first step in exercising its power of eminent domain over the Tuttle House. *Id.* Ex. B.  Finally, the City argued that the motion failed to comply with Local Rules and Rule 11.  It has requested an award of attorney's fees for responding to the motion, which it describes as "vexatious litigation tactics.  *Id.* at 11.

### F.     The Tuttles' Reply

In their reply, the Tuttles reassert that Ms. Drukker is exposed to "potential criminal liability, at least pursuant to Title 18, United States Code, Section 1513(e) (conspiracy liability). *Pls.' Reply* at 2.  They compare Ms. Drukker's affidavit with her handwritten notes of her January 12, 2007 conversation with the Tuttles and assert that the notes do not mention the

public criticism of the City at the ZBA meeting.  *Id.* at 5.  Instead, the Plaintiffs state that Ms. Drukker's notes reflect only that she mentioned the ongoing lawsuit as the impediment to the City's willingness to consider other lots.  *Id.* at 6.  They claim that Ms. Drukker attempted to induce the Tuttles to drop their lawsuit by mentioning the possibility of other lots ("Informed them I had received calls from a few owners of lots that they thought they would like in the West End ), which the City could pursue, but for the pending lawsuit.  *Id.*  Finally, the Plaintiffs justify their motion by citing 18 U.S.C. § 4 ("misprision of felony ), stating that they were obligated to bring the possibility of the commission of a crime to the Court's attention.  *Id.* at 8.

## II.   DISCUSSION

### A.   Plaintiffs' Motion for Sanctions

#### 1.   Ms. Drukker's Contact With The Tuttles

To the extent that the Tuttles are claiming that Mr. Drukker's contact with them violated a law or rule, they are plainly wrong.  The prohibition against a lawyer contacting a person he or she knows is represented by another lawyer does not apply to non-lawyers.[6]  *Sealed Appellant I v. Sealed Appellee II*, 156 Fed. Appx. 630, 634 (5th Cir. 2005) ("The rules of professional conduct prevent *counsel* from contacting persons represented by counsel but do not prohibit communication between a lawyer's client and persons, organizations, or entities of government represented by counsel, as long as the lawyer does not cause or encourage the communication without the consent of the lawyer for the other party. ) (emphasis in original) (internal punctuation and citation omitted); *Dorsey v. Home Depot U.S.A., Inc.*, 271 F. Supp. 2d 726, 730

---

[6] Rule 4.2 of the New Hampshire Rules of Professional Conduct provides:  "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.   N.H. RULES OF PROF'L CONDUCT R. 4.2.  This Rule is identical to the Model Rule, which in Comment 4 states in part: "Parties to a matter may communicate directly with each other . . . .  MODEL RULES OF PROF'L CONDUCT R. 4.2 cmt. 4.

(D. Md. 2003) ("Nothing in the law prohibits litigants or potential litigants from speaking among and between themselves, as opposed to attorneys for such parties attempting direct communications with represented parties. ). In fact, in *Siguel v. Trustees of Tufts College*, No. 88-0626-Y, 1990 U.S. Dist. LEXIS 2775 (D. Mass. Mar. 12, 1990), Judge Young commented that "such contact among parties is generally encouraged as a means of facilitating settlement and of avoiding protracted litigation. *Id.* at *5. This is not a case where Ms. Drukker contacted the Tuttles at the direction of the City's attorney nor is it a case where she contacted them after being instructed by their counsel not to do so. Instead, Ms. Drukker contacted the Tuttles in a manner consistent with her longstanding relationship with them. There is nothing either illegal or improper in her doing so.

### 2. Obstruction of Justice

By far, the Tuttles' most serious charge is that Ms. Drukker may have committed the crime of obstruction of justice or conspiracy to obstruct justice: "The City's . . . unfair and bad faith acts also constitute an attempt to corruptly obstruct, influence, or impede this judicial proceeding . . . . *Pls.' Mot.* at 12. First, they charge the City with a violation of 18 U.S.C. § 1512(c)(2):[7]

> Whoever corruptly (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c). The Tuttles next suggest that the City violated 18 U.S.C. § 1512(d)(1): "Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from (1) attending or testifying in an official proceeding . . . or attempts to

---

[7] This section is titled "Tampering with a witness, victim, or an informant.

do so, shall be fined under this title or imprisoned not more than one year, or both.    Next, they

assert violations of two subsections of 18 U.S.C. § 1513.[8]  First, under § 1513(b)(1):

> Whoever knowingly engages in any conduct and thereby causes
> bodily injury to another person or damages the tangible property of
> another person, or threatens to do so, with intent to retaliate against
> any person for the attendance of a witness or party at an official
> proceeding, or any testimony given or any record, document, or
> other object produced by a witness in an official proceeding . . . or
> attempts to do so, shall be fined under this title or imprisoned not
> more than ten years, or both.

18 U.S.C. § 1513(b)(1).  Second, under 18 U.S.C. § 1513(e):

> Whoever knowingly, with the intent to retaliate, takes any action
> harmful to any person, including interference with the lawful
> employment or livelihood of any person, for providing to a law
> enforcement officer any truthful information relating to the
> commission or possible commission of any Federal offense, shall
> be fined under this title or imprisoned not more than 10 years, or
> both.

18 U.S.C. § 1513(e).

The Tuttles' allegations are plainly groundless; obstruction of justice has no relation to

the facts at hand.  Here, consistent with her long-term relationship with the Tuttles, Ms. Drukker

contacted them to discuss the status of the relocation of the Tuttle House, after the ZBA had

denied the application for a variance on the Rockland Road site.  Ms. Drukker expressed her

view that the Gabby Lane lot might be the only viable alternative.  She told them that the public

reaction at the hearing, the project schedule, and the cost of the pending lawsuit might be

impediments to the City's willingness to consider additional potential sites.

The Tuttles' preliminary allegations – that because the City can act only through its

elected Council, Ms. Drukker misrepresented what the City was going to do – are frivolous.  It is

an elementary principal of civics that a city employee acts under the aegis of the municipality's

---

[8] This section is titled "Retaliating against a witness, victim, or an informant.

governing body and that the authority to make policy decisions rests with the City Council, not the City Engineer. The Tuttles filed no affidavit that asserts they were misled or confused by what Ms. Drukker told them she thought the City Council might do. They argue instead that Ms. Drukker had "apparent authority   to "communicate to the Tuttles on behalf of the Defendant City . . . .   *Pls.' Reply* at 2. The Court, however, will not assume that when Ms. Drukker told the Tuttles what she thought the City Council may do, the Tuttles in fact believed that she controlled the actions of the City Council or that they could have reasonably misunderstood the limits of her authority as a City employee.

Similarly, the Tuttles' overriding point – that Ms. Drukker obstructed justice by seeking to induce them to disassociate themselves from the federal lawsuit – is also frivolous. The City is a party defendant to complex federal litigation, which centers in part on the Tuttles' home. The City has the legal authority to take the house by eminent domain, but would prefer not to do so; instead, according to Ms. Drukker, it seeks to arrive at an agreement with the Tuttles to relocate the home. While the City was in the process of working with the Tuttles to resolve the relocation issue, the Tuttles sued it. The Tuttles have a perfect legal right to sue the City, but by the same token, there is nothing illegal, improper, or unethical about the City approaching them and informing them that its willingness to accommodate their relocation may be affected by the lawsuit. It is not obstruction of justice for one party to a lawsuit to suggest to another party that if the lawsuit were resolved, things would be better between them.

True obstruction of justice bears no resemblance to the facts here. *See United States v. Guardiola-Ramirez*, Criminal No. 06-006(HL), 2006 U.S. Dist. LEXIS 12659 (D.P.R. Mar. 8, 2006) (indictment alleged that "the defendant met several times with a person involved in an illegal kickback scheme . . . to attempt to influence this person to provide false information to the

grand jury  in violation of 18 U.S.C. § 1512(c)(2)).  In *United States v. McLeod*, 53 F.3d 322

(11th Cir. 1995), the court of appeals concluded that 18 U.S.C. § 1513(b)(1), retaliation against

witnesses, applies in both civil and criminal cases.  The court recounted the facts as follows:

> While in state prison, Jackie McLeod filed an action, pursuant to
> 42 U.S.C. § 1983, alleging that Houston County Deputy Sheriff
> Joe Watson and others had violated his civil rights. Watson
> testified at the ensuing trial. At the conclusion of the presentation
> of the evidence, the district judge granted a directed verdict in
> favor of Watson and the other defendants. Following the verdict,
> McLeod told Watson that as soon as he was released from prison,
> he was going to kill him. Watson reported this threat to the district
> judge and the Federal Bureau of Investigation. McLeod was
> charged with retaliating against a witness in violation of 18 U.S.C.
> § 1513(a)(1).

*Id*. at 323.  As they relate to the City's conduct, described by Ms. Drukker in her affidavit, the

statutory provisions cited by the Tuttles are patently inapposite.  The Court concludes that Ms.

Drukker in no way obstructed justice or conspired to obstruct justice under any rational

interpretation of the federal criminal statutes.

### 3.     Duty of Fair Dealing under Memorandum of Agreement

The Tuttles request that the Court sanction the City for acting in bad faith and breaching

the implied covenant of good faith and fair dealing.  In so doing, they rely on the implied

covenant under New Hampshire law, citing *Seaward Constr. Co. v. Rochester*, 383 A.2d 707,

708 (N.H. 1978) ("In every agreement there exists an implied covenant that each of the parties

will act in good faith and deal fairly with the other. ).[9]  The Tuttles claim the City implied that

"certain of its prospective actions under the MOA would be contingent upon the Tuttles's

---

[9] The Tuttles assume they can contractually enforce the provisions of an agreement they never signed. Even if the
City had held itself to the terms of the MOA, the Court is aware of no law that would allow the Tuttles to enforce the
covenant of good faith and fair dealing in an unexecuted contract.

relinquishment of their pursuit of lawful remedies . . . . *Pls.' Mot.* at 11-12.[10]  Of course, despite the Tuttles' allegations, none of this has actually happened.  They remain parties to the lawsuit and the City has not been yet charged with breach of its MOA.  Construing this exchange against the City in the most sinister manner, it amounts to the City telling the Tuttles that if they do not drop the federal lawsuit, the City may not perform in accordance with the terms of the MOA.  At worst, the City's position, if effected in the future, might be grounds for a breach of contract action, but it is not grounds for the imposition of judicial sanctions.  The merits of such a cause of action would be questionable, since the contractual covenants of good faith and fair dealing do not prevent a party from negotiating the dismissal of a related lawsuit.

### 4.    The Court's Inherent Power to Sanction

Next, the Tuttles allege that the City has abused the litigation process, and they invoke the Court's "inherent power  to sanction a party, citing *Chambers v. NASCO, Inc.* 501 U.S. 32 (1991).  In *Chambers*, the Supreme Court ruled:  "[A] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  501 U.S. at 45-46 (citation and internal quotation marks omitted); *see also Pan Am Grain Mfg. Co. v. P.R. Ports Auth.*, 295 F.3d 108, 117 (1st Cir. 2002).  The Court concludes that the City has not acted in bad faith, vexatiously, wantonly, or for oppressive reasons  and, therefore, will not exercise its inherent authority to impose sanctions for such conduct.

### B.    The City's Responsive Request for Sanctions against Plaintiffs' Counsel

The City opposes the Tuttles' motion for sanctions and suggests that the Court should sanction opposing counsel for filing a frivolous motion under Rule 11.  The Court holds in

---

[10] To be precise, Ms. Drukker's Affidavit states:  "When I reported [that the ZBA rejected the Rockland Road site] to the Tuttles, I explained that the City might not want to pursue other lots given the public concerns expressed at the variance hearing about the expense of acquiring another lot[,] the project schedule[,] and the rising expenses of the pending litigation.  *Drukker Aff.* ¶ 11.  According to Ms. Drukker, the Tuttles responded that they were surprised to find out that they were involved in litigation against the City.  *Id.* ¶ 14.

abeyance any determination as to whether and to what extent it should impose sanctions against the Tuttles or their counsel for filing this motion.[11]  The Court will resolve this issue at the end of the case; for the present, it will direct its attention to the merits of the lawsuit.

### C.   Motion to Disqualify Counsel

The Tuttles argue three grounds for their motion to disqualify counsel and strike Ms. Drukker's affidavit.  *See Pls.' Mot. to Disqualify*.  Dovetailing their motion for sanctions, the Tuttles cite Ms. Drukker's alleged criminal liability as the overall basis for disqualifying the City's counsel:  because "Ms. Drukker could be [] exposed to potential criminal liability,  she "has a significant interest in obtaining effective assistance of counsel.  *Id*. at 1.  In addition, the Tuttles assert that joint representation of the City and its employee is inappropriate because "Ms. Drukker's truthful testimony could incriminate the City  thereby creating an "intolerable conflict.  *Id*. at 2-3.  They cite *United States v. RMI Co.*, 467 F. Supp. 915 (W.D. Pa. 1979), an inapposite criminal prosecution involving price fixing, in which the court concluded that because "counsel's joint representation of the Defendant RMI and its employees who will be called as Government witnesses creates a conflict of interest,  joint representation was prohibited to prevent a Sixth Amendment issue on appeal.  *Id*. at 917.[12]  Finally, the Tuttles argue that, under Rule 12(f), the Court should strike the affidavit of Ms. Drukker, as it constitutes an "impertinent or "scandalous  matter.  *Pls.' Mot. to Disqualify* at 3.

To begin, although not briefed by the parties, the Court notes that the Tuttles' standing to bring such a motion is questionable.  Under some circumstances, a party to a civil action may

---

[11] Rule 11(c) provides that sanctions may be imposed "after notice and a reasonable opportunity to respond.  FED. R. CIV. P. 11(c).
[12] In *RMI*, counsel for RMI insisted on also representing the employees, who had invoked their Fifth Amendment privilege, but had been granted immunity in order to compel them to testify against RMI.  The court concluded that the clear conflict of interest presented Sixth Amendment implications, and therefore disqualified counsel from representing the employees who would be called as government witnesses.

have standing to move to disqualify opposing counsel – particularly, when opposing counsel has violated rules of professional conduct. *See Kevlik v. Goldstein*, 724 F.2d 844, 848 (1st Cir. 1984) (finding that counsel for the plaintiffs had standing to seek disqualification, relying on the Model Code of Professional Responsibility, DR 1-103(A), which "clearly requires that an attorney come forward if he has knowledge of an actual or potential violation of a Disciplinary Rule. ). Standing to move for disqualification generally originates from an attorney's duty to report ethical violations committed by another attorney.[13]   However, courts in this circuit have cautioned that this procedural maneuver can be used for improper purposes. *See Combustion Eng'g Caribe, Inc. v. Geo P. Reintjes Co.*, 298 F. Supp. 2d 215, 219 (D.P.R. 2003) ("The risk of this mechanism being used for tactical or strategic purposes by opposing parties in a litigation must be weighed by the court as well as the effect of negating chosen attorney. ).   Here, the Tuttles' motion is not, on its face, based on any alleged misconduct by the City's counsel. Rather, the Tuttles express concern as to whether Ms. Drukker is receiving effective assistance of counsel.

The motion to disqualify fails for several reasons.  First, the Tuttles lack standing to raise such a concern, because the "lack of any injury personal to them is fatal to their standing here. *Schneider v. County of Will*, No. 04-2058, 2005 U.S. App. LEXIS 1363, at *5 (7th Cir. Jan. 21, 2005).  In addition, the City has alleged that the motion to disqualify amounts to an effort to

---

[13] The First Circuit's approach is echoed in other circuits. *See, e.g., Wilson v. Morgan*, 477 F.3d 326, 346 (6th Cir. 2007) (noting that the Tennessee Rules of Professional Conduct allow opposing counsel to raise a conflict of interest question); *Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co.*, Civil Action No. 91-5433, 1994 U.S. Dist. LEXIS 2154, at *5-6 (D.N.J. Feb. 23, 1994) (rejecting the contention that only a client or former client affected by the potential conflict may move for disqualification, and finding standing based on New Jersey's Rules of Professional Conduct, which require a lawyer to report another attorney's misconduct); *but see Shire Labs., Inc. v. Nostrum Pharms., Inc.*, Civil Action No. 03-4436 (MLC), 2006 U.S. Dist. LEXIS 51043, at *12 (D.N.J. July 25, 2006) ("This Court recognizes that a party does not have standing to bring a Motion to Disqualify based on a material conflict of interest unless the party is either a former or current client. ); *Jacobs v. Transocean Entm't*, Nos. 95-55804, 95-56762, 1996 U.S. App. LEXIS 27591, at *9-10 (9th Cir. Oct. 22, 1996) ('[I]t is questionable whether Jacobs and Lawrence should have standing to move to disqualify opposing counsel on the basis that opposing counsel's joint clients have conflicts with one another. ).

distract the Court from the purpose of the pending lawsuit, *Def. City of Concord's Obj.* at 5 (Docket # 115), which could constitute the "tactical or strategic purposes  that *Combustion Engineering Caribe* cautioned against.  Lastly, having already determined that the Tuttles' allegations of criminal conduct are far-fetched, the Court concludes that the Tuttles' motion for disqualification lacks a valid premise.  The Court denies the motion to disqualify counsel and motion to strike.

## III.    CONCLUSION

The Court DENIES Plaintiffs' Motion for Sanctions (Docket # 107) and their Motion to Disqualify Counsel and Strike Ms. Drukker's Affidavit (Docket # 114); the Court STAYS any further decision regarding the appropriateness of imposing sanctions against Morton and Carolyn Tuttle and/or their counsel, Gordon R. Blakeney.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE
SITTING BY DESIGNATION

Dated this 24th day of May, 2007