UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| NORTHWEST BYPASS GROUP, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 06-CV-00258-JAW |
| | ) | |
| U.S. ARMY CORPS | ) | |
| OF ENGINEERS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER ON PLAINTIFFS' AMENDED MOTION FOR PARTIAL RECONSIDERATION OF ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

The Court denies the Plaintiffs' motion for reconsideration of its Order denying their motion for preliminary injunction, because they have failed to demonstrate that there is new evidence not previously available, that there has been an intervening change in controlling law, or that the Court needs to correct a clear error of law or prevent a manifest injustice. More specifically, the Court concludes that the Plaintiffs have waived one argument, have attempted to present a new argument that could have and should have been raised earlier, have failed to demonstrate that the Court's original analysis misconstrued their previous arguments, and have been unable to convince the Court that it erred as a matter of law when it preliminarily concluded that the decision of the U.S. Army Corps of Engineers (Corps), granting a permit to the city of Concord (City) to fill wetlands, passed legal muster.

### I.    PROCEDURAL HISTORY

Plaintiffs filed suit against the Corps and the City on July 13, 2006, alleging that the Corps violated the Clean Water Act (CWA), the National Environmental Policy Act (NEPA),

and the National Historic Preservation Act (NHPA) when it granted the City a permit to fill certain wetlands to build a three-quarter mile road. *See Compl.* (Docket # 1). On the same day, they moved for a temporary restraining order (TRO) and a preliminary injunction. *See Pls.' Mot. for TRO and Prelim. Inj.* (Docket # 2). Plaintiffs subsequently filed an emergency motion for a TRO and requested an expedited hearing (Docket # 32) on September 6, 2006. The Court held a hearing on both the TRO and preliminary injunction on September 13, 2006, and denied the TRO by order dated September 15, 2006. *See Order on Emergency Mot. for TRO* (Docket # 46).[1] Plaintiffs moved for reconsideration of that order (Docket # 50).

On January 5, 2007, the Court denied Plaintiffs' motion for a preliminary injunction. *See Order* (Docket # 81) (*Order*). Within that Order, the Court also denied Plaintiffs' motion for reconsideration of the Order on the TRO. *Id.* at 2 n.5. On January 29, 2007, the Plaintiffs moved for reconsideration of the order denying a preliminary injunction. *See Mot. for Reconsideration of Order on Pls.' Mot. for Prelim. Inj.* (Docket # 87). Plaintiffs replaced this motion with an amended motion the following day, which is the motion for reconsideration currently at bar (Docket # 91) (*Pls.' Mot.*).[2]

II.   **DISCUSSION**

   A.   **Availability and Standards**

Under 28 U.S.C. § 1292(a)(1), a court of appeals has jurisdiction of appeals from "[i]nterlocutory orders . . . refusing or dissolving injunctions. Because an order denying a preliminary injunction is an "order from which an appeal lies, FED. R. CIV. P. 54(a), it is a

---

[1] The Court ruled on the motion for TRO on an expedited basis and focused on narrow issues, because the construction would have a limited initial effect. The Order denying the preliminary injunction addressed the full range of issues the Plaintiffs set forth in their Complaint.

[2] Plaintiffs have not complied with the District of New Hampshire's Local Rules, which impose a fifteen-page limit on memoranda of law for non-dispositive motions. *See* LR 7.1(a)(3). Plaintiffs' memorandum is twenty pages long. The Court will, once again, overlook the Plaintiffs' failure to comply with the District's local rules; however, once again, it reminds counsel that "the Rule exists to be followed. *Order On Pls.' Mot. for Sanctions and Mot. to Disqualify Counsel* at 2-3 (Docket # 120).

"judgment for purposes of the Federal Rules. *See Ty, Inc. v. Publ'ns Int'l Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002); *Lichtenberg v. Besicorp Group, Inc.*, 204 F.3d 397, 400 (2d Cir. 2000); *see also* 10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2658.1 [hereinafter WRIGHT & MILLER]. Rule 59 of the Federal Rules of Civil Procedure deals with new trials and amendment of judgments. *See* FED. R. CIV. P. 59. The Rule encompasses motions for reconsideration. *See United States v. $ 23,000 in United States Currency*, 356 F.3d 157, 165 (1st Cir. 2004) ("We note that a motion 'asking the court to modify its earlier disposition of the case because of an allegedly erroneous legal result is brought under FED. R. CIV. P. 59(e).' ") (quoting *In re Spittler*, 831 F.2d 22 (1st Cir. 1987)); *see also* 11 WRIGHT & MILLER § 2810.1.

The First Circuit recently addressed the standards for assessing motions for reconsideration:

> The granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly. . . . Unless the court has misapprehended some material fact or point of law, such a motion is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected. . . . To obtain relief, the movant must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law.

*Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006); *see also Fed. Deposit Ins. Corp. v. World Univ., Inc.*, 978 F.2d 10, 16 (1st Cir. 1992) ("Rule 59(e) motions are aimed at reconsideration, not initial consideration. ) (citation and internal citations omitted); *Order On Pls.' Am. Mot. for Recons. of Order on Pls.' Mot. to Complete the Admin. R.* at 2 (Docket # 118). As an "extraordinary remedy, a motion for reconsideration's utility is properly limited to: "(1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice.

3

*Villanueva-Mendez v. Nieves Vazquez*, 360 F. Supp. 2d 320, 24 (D.P.R. 2005). Otherwise, "in the interest of finality . . . motions for reconsideration should be granted sparingly because parties should not be free to relitigate issues a court has already decided. *Id.*

### B.   Plaintiffs' Motion

#### 1.   Balancing Analysis

Count I of the Plaintiffs' Complaint alleges generally that, in issuing the CWA § 404 permit, the Corps acted in an arbitrary and capricious manner in balancing the benefits of the project against its reasonably foreseeable detriments. *Compl.* ¶¶ 79-107. In its Order, the Court rejected the Plaintiffs' challenge and concluded that the Plaintiffs failed to demonstrate a "likelihood of success on the merits of Count I. *Order* at 13-15. The Court discussed whether (1) "the Corps relied on traffic studies that considered the potential impact of the development of both Phase II and Phase III of the Northwest Bypass project and failed to assess the impact of Phase II alone;  and, (2) there was expert evidence refuting the Corps's conclusion. *Id.* Plaintiffs contend that the Court failed to address one of their principal claims:

> [T]he Court misconstrues the plaintiffs' principal claim as being that "the Corps *relied on traffic studies* that considered the potential impact of the development of both Phase II and Phase III of the Northwest Bypass project and failed to assess the impact of Phase II alone. Order at 13 (Docket # 81) (emphasis added, citations omitted). Instead, the plaintiffs['] first claim is that the *response* to relevant and significant public comments, by the Army Corps in its decisional Environmental Assessment and Statement of Findings . . . is arbitrary and capricious.

*Pls.' Mot.* at 1 (emphasis in original).[3] The Plaintiffs conclude: "The Army Corps was obliged but failed to explain how this project's claimed benefits outweighed its claimed detriments. *Pls.' Mot.* at 4.

---

[3] Paragraph 106 of the Complaint reads in part: "Alternatively, the ACOE statement that 'the Corps is not deciding that issue at this time' constitutes arbitrary or capricious agency failure to respond to relevant and significant public comments. *Compl.* ¶ 106.

4

The Plaintiffs point out that the Complaint itemized numerous "significant public comments that the Corps received:

> (a) that the traffic analyses presented in support of the application studied alternatives for the entire Northwest Bypass and did not include analysis of the Phase II portion by itself nor with the proposed closure of Silk Farm Road, and therefore did not address the project under consideration; (b) that simply completing the Phase II project as presented (which includes the closure of Silk Farm Road/Dunbarton Road), at least without completing the entire Northwest Bypass, would attract new traffic to Pleasant Street traveling to and from the areas East of Concord Hospital (Concord's population and business centers) and Phase II; (c) that the new traffic would increase congestion on Pleasant Street; (d) that the increased Pleasant Street congestion would exacerbate existing public safety hazards caused by traffic cutting-through neighborhood streets to avoid the five-pronged Pleasant Street/Fruit Street intersection; and (e) that these effects vitiate the principal purported purpose, need and benefit of Phase II, the principal "pedestrian safety and traffic benefits of which, EA/SOF at 10, must necessarily result from *decreasing* such Pleasant Street traffic.

*Compl.* ¶ 89 (emphasis in original).

The Complaint further alleges that the Corps responded to these concerns in the Environmental Assessment (EA) as follows:

> It is *hard to see* how building the Langley Parkway between Clinton Street and Pleasant Street would cause *much* change in the traffic patterns *[ex]cept* the intended consequence of traffic between the hospital complex and I-89/Clinton using the parkway rather than South Fruit street [sic] and Pleasant Street.

*Compl.* ¶ 90 (quoting the EA) (emphasis in Complaint); and,

> From the Army Corps of Engineers perspective, we do not think the Langley Parkway South will attract much traffic to residential neighborhoods. Some traffic between 1-89 and Clinton Street will be able to use the new road and not have to travel east to South Fruit Street and then north on south Fruit street to get to Pleasant Street and west on Pleasant Street get to [sic] the hospital. *Some vehicles coming from north and east of the corner of Pleasant*

5

>  Street and South Fruit street *may* choose to travel out (west on) Pleasant Street to get to Langley Parkway South to get to Clinton street (sic) and thence to route I-89, rather than proceeding south on South Fruit Street to get to Clinton Street. Building the entire Northwest Bypass *might* have a greater impact on traffic patterns in the city *but the Corps is not deciding that issue at this time*.

*Id.* ¶ 9 (emphasis in Complaint).

The Plaintiffs now argue that the Corps's articulated response was so inadequate to be arbitrary and capricious. Although the Court addressed their argument about whether the record contained evidence sufficient to sustain the Corps's conclusions, the Plaintiffs stress that the "plausible support in the evidence before the agency" is a "much more forgiving standard, by which the Court might overlook the agency's actual rationale to see if instead there is any competent . . . evidence, not cited by the agency, that provides a *different* response, albeit a specific and satisfactory one, to the plaintiffs' expert's critique. *Pls.' Mot.* at 2 (emphasis in original).

First, the Plaintiffs waived this argument. Simply put, the Plaintiffs' contentions regarding the asserted inadequacy of the Corps's expressed rationale, although clearly expressed in their motion for reconsideration, appear nowhere in their Complaint, original motion, or memoranda. The Complaint attacks the language in the Corps's decision, but nowhere clarifies – as does the motion for reconsideration – that the asserted inadequacy of the Corps's explanation was itself arbitrary and capricious.[4] Instead, the Plaintiffs focused their argument on the absence

---

[4] In paragraph 91 of the Complaint, the Plaintiffs quote from the Corps's conclusions – "hard to see" and the agency "do[es] not think" – and in paragraph 92, the Complaint states: "Therefore, to pass muster, these agency conclusions must find plausible support in the evidence before the agency." *Compl.* ¶¶ 91-92. Similarly, paragraph 95 alleges that the Corps's finding regarding traffic is "contrary to the evidence before the agency." *Id.* ¶ 95. In paragraph 104, after reciting public comments in their favor, the Plaintiffs allege that their position finds "essentially undisputed evidentiary support in the record before the [Corps]." *Id.* ¶ 104. In paragraph 105, the Plaintiffs allege that the Corps's weighing of the benefits versus its detriments is "arbitrary and capricious because the agency could not plausibly have found that the project would accomplish its central claimed benefit." *Id.* ¶ 105. The closest the Plaintiffs come to their current argument is paragraph 106, where they alleged that the "[Corps's] statement that 'the Corps is not deciding that issue at this time' constitutes arbitrary or capricious agency failure to respond to relevant

of evidentiary support in the record for the Corps's conclusions. A motion for reconsideration is neither a vehicle for relitigating issues a court has already decided, nor for litigating for the first time issues the Court was not previously asked to decide.

In excess of caution, however, the Court will address the Plaintiffs' contention that the Corps's decision was so deficient in its articulated rationale as to be arbitrary and capricious. The Plaintiffs cite no law supporting their contention that the Corps's decision must address with specificity each particular objection raised by the project's opponents. In fact, the law does not mandate such exhaustive decisions; instead, the law requires only at a minimum that the agency's "basic rationale is clear enough to permit review. *Waweru v. Gonzales*, 437 F.3d 199, 204 (1st Cir. 2006). In *Waweru*, the First Circuit referred to *Bowman Transportation, Inc. v. Arkansas-Best Freight Sys., Inc.*, which stated: "While we may not supply a reasoned basis for the agency's action that the agency itself has not given . . . we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned. 419 U.S. 281, 285-86 (1974) (citations omitted). After reviewing the Corps's decision, the Court concludes that it meets the *Waweru* standard. *See Waweru*, 437 F.3d at 204 n.5 ([T]he *Chenery* doctrine, *see SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), aims to prevent a court from inventing a rationale for the agency, but it does not prevent ascertaining a rationale that is less than perfectly expressed. ).

2.  **Alternatives Analysis**

Next, Plaintiffs contend that the Court committed legal error in its alternatives analysis under the CWA. In its Order, the Court outlined the framework for its analysis:

---

and significant public comments.  *Id.* ¶ 106. But, the Plaintiffs' quotation of the Corps's decision comes in the context of whether the Corps is considering the entire Northwest Bypass project or only Phase II and the Corps's clarification that it was not deciding the potential impact on traffic patterns if the entire project were built.  This allegation is not the same argument the Plaintiffs are attempting to raise in their motion for reconsideration.  In short, nothing in the Complaint placed the Court on notice of the Plaintiffs' current contention.  The Plaintiffs' memoranda in support of its motion for a TRO and a preliminary injunction and their reply all fail to mention this rationale. *See Pls.' Mem. of Law in Supp. of Mot. for TRO and Prelim. Inj.* (Docket # 2); *Pls.' Mem. of Law in Reply to Defs.' Opp'n Mem.* (Docket # 24).

>Under 40 C.F.R. § 230.10(a)(3), there is a presumption that alternatives exist when the proposed project is not "water dependent. The Phase II construction does not "require access or proximity to . . . the special aquatic site in question to fulfill its basic purpose. 40 C.F.R. § 230.10(a)(3). Thus, "when the basic purpose of a project may be accomplished without 'access or proximity' to a 'special aquatic site . . . practicable alternatives that do not involve special aquatic sites are presumed to be available, unless clearly demonstrated otherwise.' *Greater Yellowstone Coal.*, 321 F.3d at 1262 n.12 (quoting 40 C.F.R. § 230.10(a)(3)). In other words, "under the CWA, it is not sufficient for the Corps to consider a range of alternatives to the proposed project: the Corps must rebut the presumption that there are practicable alternatives with less adverse environmental impact. *Id.*; *see also Nat'l Wildlife Fed'n, v. Whistler*, 27 F.3d 1341, 1344 (8th Cir. 1994) ("This presumption of practicable alternatives is very strong, creating an incentive for developers to avoid choosing wetlands when they could choose an alternative upland site . . . . (citations and internal quotation marks omitted)). Therefore, it is presumed that there existed alternatives to the chosen course of action, because the Phase II project does not depend on an "aquatic site for its existence. The question becomes whether any of the existing alternatives were practicable, such that the discharge of fill could be avoided.

*Order* at 15-16 (footnote omitted).

In their motion for reconsideration, Plaintiffs imply that the Court applied the wrong standard, but then proceed to cite generally the same case law the Court cited in its Order. *Compare Pls.' Mot.* at 4-5 *with Order* at 15-16. In the Order, the Court recognized that, under the CWA, there is a "very strong presumption that practicable alternatives exist when a proposed project is not water-dependent, and that the agency carries the burden to rebut that presumption by showing the alternatives to be impracticable.[5] *Order* at 15-16. Despite the

---

[5] The Plaintiffs criticize the Court for failing to reflect that the "oft-quoted characterization of the strength of the CWA presumption as being '*very* strong, italicizing the modifier, "very. *Pls.' Mot.* at 5 (quoting *Buttrey v. United States*, 690 F.2d 1170, 1180 (5th Cir. 1982) (emphasis in original)). It is true that in its Order, the Court inadvertently failed to italicize "very in quoting the same language in *Nat'l Wildlife Fed'n v. Whistler*, 27 F.3d 1341, 1344 (8th Cir. 1994). *See Order* at 15-16. The Plaintiffs do not contend that the Court applied the wrong legal standard or that the Court incorrectly quoted the words, but only that its quotation omitted italics on the word "very. Although the Plaintiffs are technically correct, their argument seems a bit punctilious.

8

general congruity between the case law cited in the Order and the case law cited by the Plaintiffs, they worry that the Court failed to apply the correct legal standard, quoting from *Utahns for Better Transp. v. United States Dep't of Transp.*, 305 F.3d 1152, 1187 (10th Cir. 2002), and claiming that in addition to the *very* strong presumption and the placement of the burden on the applicant, there is a requirement that the applicant sustain its burden by detailed, clear, and convincing information proving impracticality, which the Corps independently verifies. To reassure the Plaintiffs, the Court now affirms that it applied exactly the same standard the Plaintiffs say it should have applied. It appears they simply disagree with the Court's conclusion: that the Corps properly determined that the City had rebutted the presumption by showing that the available alternatives were impracticable. To make it clear, the Court reaffirms its conclusion that the Corps was justified in reaching its independent decision based on evidence in the record that the City had sustained its burden by "detailed, clear and convincing information, proving impracticality. *Id.* Because in reaching its decision, the Court applied the same standards the Plaintiffs urge upon it in their motion for reconsideration, they have not set forth grounds for relief under Rule 59.

The Plaintiffs then argue the evidence, asserting that it is insufficient as a matter of law to sustain the Corps's conclusions. The Court has considered these arguments and has rejected them. *See Order* at 16-17. The Plaintiffs' motion for reconsideration does not alter its analysis.

### 3. Cumulative Impacts

Plaintiffs next object to the Court's language that "the relationship between Phase II and Phase III is much too speculative to mandate Phase III consideration. *Pls.' Mot.* at 12 (quoting *Order* at 21-22). In this section of the Order, the Court concluded that the Plaintiffs were not likely to succeed in showing that the Corps engaged in improper segmentation because the Phase

9

II road has justification independent from the entire Northwest Bypass project – to relieve traffic congestion and provide for easy access to the hospital by emergency vehicles. Moreover, the Court concluded that they were not likely to succeed in showing that the Corps's decision was arbitrary or capricious, because the construction of Phase III is not reasonably foreseeable. Plaintiffs cite no manifest error of law committed by the Court, but suggest that the lack of current plans to build Phase III does not render it too speculative for consideration. *Pls.' Mot.* at 12 (citing *Appalachian Mountain Club v. Brinegar*, 394 F. Supp. 105, 111 (D.N.H. 1975)). They disagree with the Court's conclusion, but raise no new evidence and no manifest error of law that would justify relief under Rule 59.

### 4. NHPA – Tuttle Home and Pleasant View Home

Regarding the NHPA claims, the Plaintiffs first claim that the "Court has not addressed the plaintiffs' allegations that under the NHPA *the Army Corps was required to consult with the Tuttles* . . . . *Pls.' Mot.* at 15 (emphasis in original). This assertion is plainly wrong, and the Court will not repeat its original analysis. *See Order* at 32-33 (discussing the October 6, 2000 meeting attended by the Corps and the Tuttles, and the Corps's subsequent follow-up on this issue with the Advisory Council on Historic Preservation). The administrative record does not support Plaintiffs' assertion that "[i]t is undisputed that the agency never contacted the Tuttles, a plain violation of the NHPA. *Pls.' Mot.* at 16.

Next, with respect to the Pleasant View Home issue, Plaintiffs reiterate their argument that "the record is devoid of any evidence that the Army Corps ever consulted with anyone about [] noise impacts. *Pls.' Mot.* at 16. The Plaintiffs' disagreement with the Court's conclusions is not an adequate ground for relief under Rule 59.

Finally, Plaintiffs address the Carmelite Monastery – a non-register property – asserting that the Court did not apply Section 106 of the NHPA correctly in concluding that the Corps's consideration of adverse noise impacts was adequate. *Pls.' Mot.* at 17-18. According to Plaintiffs, the Corps failed to employ technical expertise, and simply deferred to the determination of a state agency. *Id.* These arguments are simply reiterations of previous arguments, which the Court considered in denying their motion for preliminary injunction. They have not presented any newly discovered evidence, nor have they alleged that the Court has committed a manifest error of law.

5.   **NEPA**

Plaintiffs present their final objection for the first time in this motion for reconsideration. They quote *Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 736 (9th Cir. 2001), for the proposition that "[a]gencies must prepare environmental impact statements whenever a federal action is controversial, that is, when substantial questions are raised as to whether a project . . . may cause significant degradation of some human environmental factor . . . . *Id.* at 736 (citation and internal quotation marks omitted). Plaintiffs essentially argue that, because this project is controversial, the Corps's failure to prepare an environmental impact statement was arbitrary and capricious. *Pls.' Mot.* at 19.

The purpose of a Rule 59 motion is not to raise new arguments that could have been included in previous filings. As such, there is no basis for granting relief under Rule 59. However, even if this argument had been raised before, it lacks merit. As the Corps acknowledges, the definition of "controversy" in this context is not as broad as the Plaintiffs

11

would hope.[6]  For example, in *Greenpeace Action v. Franklin*, 14 F.3d 1324 (9th Cir. 1992), the Ninth Circuit said:

> An agency's careful evaluation of the impact of its proposed action, its collection and review of evidence, and its reasoned conclusions as to what the date reveals would be for naught if by simply filing suit and supplying an affidavit by a hired expert, predicated upon the same facts relied upon by the agency but reaching a different conclusion, a litigant could create a controversy necessitating an EIS.

*Id.* at 1335.  As the Fourth Circuit has pointed out, and common sense dictates, the term "controversial" is not synonymous with "opposition."  *See North Carolina v. Fed. Aviation Admin.*, 957 F.2d 1125, 1134 (4th Cir. 1992) (adding that "[o]therwise, opposition, and not the reasoned analysis set forth in an environmental assessment, would determine whether an environmental impact statement would have to be prepared. . . .  The outcome would be governed by a 'heckler's veto.' ").  The Ninth Circuit's framing of the controversy in *Babbitt* is telling:  "[National Parks & Conservation Association] asserted that the effects on the environment would likely be substantial.  The [National] Parks Service responded that the extent of the effects was unknown.  Therein lay the controversy.  241 F.3d at 737.  The court did not excuse the Parks Service from preparing an EIS to find out the extent of the effects "when there is a reasonable possibility that such information can be obtained in connection with the preparatory process.  *Id.*

Here, the Plaintiffs have not established that the same sort of controversy exists as in *Babbitt* and therefore, even had the Plaintiffs previously raised this issue, the Court would not have found a likelihood of success on the merits sufficient to justify the issuance of a preliminary injunction.

---

[6] The Court previously noted that the Northwest Bypass project is "controversial" in the general sense of the term.  *Order on Pls.' Motions for Leave to Amend Compl.* at 8 (Docket # 119).

12

### III.   CONCLUSION

The Court DENIES the Plaintiffs' motion for reconsideration (Docket # 91).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE
SITTING BY DESIGNATION

Dated this 4th day of June, 2007