UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| NORTHWEST BYPASS GROUP, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 06-CV-00258-JAW |
| | ) | |
| U.S. ARMY CORPS | ) | |
| OF ENGINEERS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTIONS FOR SANCTIONS

## I.      STATEMENT OF FACTS

In this acrimonious, complex, and prolonged lawsuit, the parties have filed dueling motions for sanctions.  The Court reviews the factual and legal backdrop of these motions, denies the Plaintiffs' motion, and defers final ruling on the motions of the Defendants and Intervenors.  The Court orders the scheduling of a hearing on the pending motions to accord the parties, particularly the Plaintiffs and their counsel, an opportunity to be heard.

### A.      The Motions for Sanctions

On September 27, 2007, the city of Concord moved for sanctions against Plaintiffs Northwest Bypass Group, Morton C. and Carolyn H. Tuttle, Leslie J. Ludtke, and their counsel, Gordon R. Blakeney, Jr., seeking reimbursement of attorney's fees totaling $14,448.50 that it expended defending what it termed were "unnecessary and inappropriate pleadings . . . filed for vexatious purposes and undertaken with no reasonable expectation of prevailing on the merits." *Mem. of Law in Supp. of Def. City of Concord's Mot. for Sanctions* at 2 (Docket # 153-2) (*Concord Mem.*).  On October 26, 2007, Intervenors Concord Hospital and St. Paul's School followed suit and filed their own motion for sanctions, requesting $12,610.94 in attorney's fees

on the same basis.[1]  *Mem. of Law in Supp. of Intervenors' Mot. for Sanctions* (Docket # 160-2) (*Intervenors' Mem.*); *Intervenors' Mot. to Substitute Intervenors' Mot. for Sanctions and Mem. of Law in Support Thereof*.  The Plaintiffs and their counsel have objected.  *Pls.' Mem. in Supp. of Provisional Objection to* Def. City of Concord's Mot. for Sanctions *with Req. for a Hr'g* (Docket # 159-2) (*Pls.' Mem.*); *Att'y Blakeney's Mem. in Supp. of Objection to Intervenors' Mot. for Sanctions* (Docket # 168-2) (*Blakeney Mem.*).

### B.    The Source of Controversy

The Plaintiffs and their lawyer have waged an interminable, dogged, and uncompromising campaign in administrative venues, and in state and federal courts, to oppose the construction of Phase II of the Northwest Bypass.  The Defendants' motions for sanctions contend that the Plaintiffs' conduct in this case has crossed the line, hardening legitimate opposition into harassment.

The Court has elsewhere related the controversy surrounding the construction of Phase II of the Northwest Bypass.  The litigation began in the courts of the state of New Hampshire, ending with the New Hampshire Supreme Court.  *Blakeney v. City of Concord*, No. 2004-0438, slip op. (N.H. Aug. 19, 2005) (Corrected Order).  Unsuccessful at the state level, the Plaintiffs pursued this federal action.  Concerned that the road construction was about to begin, the Plaintiffs moved for a temporary restraining order on September 6, 2006.  *Pls.' Emergency Mot. for TRO and Req. for Expedited Hr'g* (Docket # 32).  After a September 13, 2006 hearing, the Court denied the motion on September 15, 2006.  *Northwest Bypass Group v. U.S. Army Corps of Eng'rs*, 453 F. Supp. 2d 333 (D.N.H. 2006) (*Order on Pls.' Mot. for TRO* (Docket # 46)) (*Northwest Bypass Group I*).  On January 5, 2007, the Court denied the Plaintiffs' motion for

---

[1] On October 31, 2007, the Intervenors moved to decrease their request for sanctions by $1,406.32, from $14,017.26 to $12,610.94 because of an inadvertent error.  *Intervenors' Mot. to Substitute Intervenors' Mot. for Sanctions and Mem. of Law in Support Thereof* (Docket # 161).  The Court grants this motion.

preliminary injunction.  *Northwest Bypass Group v. U.S. Army Corps of Eng'rs*, 470 F. Supp. 2d 30 (D.N.H. 2007) (*Order on Pls.' Mot. for Prelim. Inj.* (Docket # 81)) (*Northwest Bypass Group II*).  Contemporaneous with this opinion, the Court is issuing a decision denying the Plaintiffs' motion for permanent injunction.  *Order on Pls.' Mot. for Permanent Inj.*  This much is unremarkable.

### C.    Serial Motions to Reconsider

What is striking is the Plaintiffs' persistent refusal to accept the Court's decisions.  The Plaintiffs have moved the Court to reconsider nearly every order it has issued.[2]  *See Northwest Bypass Group I*, 453 F. Supp. 2d at 345; *Pls.' Mot. to Reconsider Order on Pls.' Mot. for TRO* (Docket # 50); *Addendum to Pls.' Mot. to Reconsider Order on Pls.' Mot. for TRO* (Docket # 54); *Northwest Bypass Group II*, 470 F. Supp. 2d at 67; *Pls.' Am. Mot. to Reconsider Order on Pls.' Mot. for Prelim. Inj.* (Docket # 91); *Order on Pls.' Mot. to Complete Administrative R. and Mot. for Leave to File a Reply* (Docket # 82); *Pls.' Am. Mot. for Partial Recons. of Order on Pls.' Mot. to Complete the Administrative R. and Mot. for Leave to File a Reply* (Docket # 92); *Order on Pls.' Mots. for Leave to Amend the Compl.* (Docket # 119); *Pls.' Mot. to Reconsider Order on Pls.' Mots. for Leave to Amend Compl.* (Docket # 123); *Order on Pls.' Mot. for Sanctions and Mot. to Disqualify Counsel* (Docket # 120); *Mot. for Partial Recons. and to Clarify Order on Pls.' Mot. for Sanctions and Mot. to Disqualify Counsel* (Docket # 127).

### D.    Serial Denials

With one exception, the Court denied each motion for reconsideration.  *See Northwest Bypass Group II,* 470 F. Supp. 2d at 35 n.5*; Order on Pls.' Am. Mot. for Partial Recons. of Order on Pls.' Mot. to Complete the Administrative R.* (Docket # 118); *Order on Pls.' Am. Mot.*

---

[2] There is a single exception.  Plaintiffs did not move for reconsideration of the Court's Order denying their supplemental motion to complete the record.  *See Order on Pls.' Supplemental Mot. to Complete the Administrative R.* (Docket # 117).

*for Partial Recons. of Order on Pls.' Mot. for Preliminary Inj.* (Docket # 124); *Order on Mot. to Reconsider Order on Mots. for Leave to Am. Compl.* (Docket # 137).

The sole exception was the Plaintiffs' motion for partial reconsideration of the order on the motion for sanctions.  In its Order, the Court assumed that as the motion addressed interaction solely between the City and the Tuttles, the remaining plaintiffs – Northwest Bypass Group and Leslie J. Ludtke – should not be subject to sanction.  *Order on Pls.' Mot. for Sanctions and Mot. to Disqualify Counsel* at 1.  In a response that was at least in part baffling, Northwest Bypass Group and Ms. Ludtke moved for reconsideration, not just asking for reconsideration of the merits, but also clarifying that they had filed the motion "on behalf of all the plaintiffs."  *Mot. for Partial Recons. and to Clarify Order on Pls.' Mot. for Sanctions and Mot. to Disqualify Counsel* at 2.  Acceding to a portion of their request, the Court agreed to "consider imposing sanctions against all of the Plaintiffs and their counsel, not against the Tuttles and their counsel alone."  *Order on Pls.' Mot. for Partial Recons. of Order on Sanctions* at 2 (Docket # 140).

### E.    The Immediate Precursors: Plaintiffs' Motions for Sanctions

The immediate precursors to the Defendants' motions for sanctions were the motions for sanctions that the Plaintiffs themselves filed against the city of Concord, claiming that the City engaged in potential violations of criminal law and breached its contractual duty of good faith and fair dealing.  *Pls.' Mot. for the Imposition of Sanctions for the City of Concord's Bad Faith Tactics Constituting Obstruction of Justice* (Docket # 107); *Mot. to Disqualify the Def. City's Counsel from Representation of Ms. Drukker and to Accordingly Strike the Aff. of Martha Drukker* (Docket # 114).  In its Order dated May 24, 2007, the Court denied the Plaintiffs' motions for sanctions.  *Order on Pls.' Mot. for Sanctions and Mot. to Disqualify Counsel.*  The

Court variously characterized the Plaintiffs' motion as "plainly wrong," "plainly groundless," and "frivolous." *Id.* at 8-11. It held in abeyance, however, "any determination as to whether and to what extent it should impose sanctions against the Tuttles or their counsel for filing this motion." *Id.* at 13-14. Instead, the Court stated that it would resolve this issue "at the end of the case; for the present, it will direct its attention to the merits of the lawsuit." *Id.* at 14.

**F.     The Defendant's Motions for Sanctions**

Perhaps encouraged by the Court's May 24, 2007 Order, the city of Concord filed its own motion for sanctions, asserting that the Plaintiffs have engaged in a pattern of abusive and vexatious litigation practices, needlessly and frivolously challenging court orders in this case. *Concord Mem.* at 1-2. Six days later, Concord Hospital and St. Paul's followed suit with their own similar motion. *Intervenors' Mem.* at 1. Although the City's motion refers to the prior history of unsuccessful state litigation, Concord emphasizes that it "does not contest the Plaintiffs' right to bring this action or to thoroughly plead their case in seeking relief." *Concord Mot.* at 2. Instead, Concord focuses on eight of the Plaintiffs' motions, which it claims justify the imposition of sanctions against the Plaintiffs and their counsel: (1) the Plaintiffs' motion for reconsideration of the Order denying the Temporary Restraining Order and the addendum to that motion (Docket # 50, 54); (2) the Plaintiffs' motion for reconsideration of the Order denying the motion for preliminary injunction (Docket # 91); (3) the Plaintiffs' motion for reconsideration of the Order denying the motion to complete the administrative record (Docket # 92); (4) the Plaintiffs' motions to amend their complaint (Docket # 88, 106); (5) the Plaintiffs' motion to reconsider the denials of the motion to amend (Docket # 123); (6) the Plaintiffs' motion for sanctions (Docket # 107); (7) the Plaintiffs' motion to disqualify counsel (Docket # 114); and,

(8) the Plaintiffs' motion for partial reconsideration of the Order on their motion for sanctions (Docket # 127).

The city of Concord observes that a district court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Concord Mem.* at 10 (quoting *Dubois v. United States Dep't of Agric.*, 270 F.3d 77, 80 (1st Cir. 2001)). It urges the court to exercise its "inherent authority to maintain order, prevent delay and prejudice, and manage its own affairs." *Concord Mem.* at 11. It cites 28 U.S.C. § 1927 as a possible statutory basis for issuing a sanction against Attorney Blakeney, not the Plaintiffs themselves. *Id.* at 13. The Intervenors echo the City's contentions. *Intervenors' Mem.* at 7-9.

### G.    The Plaintiffs' and Attorney Blakeney's Responses

Mr. Blakeney filed objections on behalf of the Plaintiffs. *Pls.' Mem.*; *Blakeney Mem.* On November 14, 2007, Attorney Mark Howard entered a limited appearance to represent Attorney Blakeney in his individual capacity only. *Limited Appearance on Behalf of Pl.'s Counsel in His Individual Capacity* (Docket # 164). On November 21, Attorney Howard filed an objection to the Intervenors' motion and on December 13, 2007, he filed a surreply on behalf of Mr. Blakeney. *Blakeney Mem.; Attorney Blakeney's Mem. in Surreply to Def. City of Concord's Reply to Pls.' Provisional Objection to Mot. for Sanctions* (Docket # 176-2) (*Blakeney Surreply*).

Mr. Blakeney makes it clear that since the City and the Intervenors are requesting sanctions that "arise solely from pleadings [he] prepared and filed," and that the Plaintiffs relied on his advice, the Court should impose any sanction against him, not his clients. *Blakeney Mem.* at 1. He also points out that the movants are not claiming sanctions under Rule 11, and argues that the motions fail to comport with the standards of 28 U.S.C. § 1927. *Pls.' Mem.* at 1-2. Responding to the movants' position that the motions for reconsideration failed to comply with

the standards for such a motion – namely manifest error of law or newly discovered evidence – Mr. Blakeney insists that a motion for reconsideration is nothing more than its title: "The rules allow for motions to <u>re</u>consider, which by definition is to consider again. It is not by definition to assert entirely new matters or to reconsider matters already decided, which is all the City contends these motions were." *Id.* at 12 (emphasis in original). He notes that as an attorney, he has an obligation to his clients to protect their interests. *Id.* at 13. He concludes that "the Court should find and rule that [the motions for sanctions were] filed for the improper and vexatious purpose of obfuscating the material disputes in the case and prejudicing the Court against the plaintiffs, and the Court should award the plaintiffs their reasonable attorney's fees and costs for being forced to respond." *Id.* at 16.

In his memorandum in support of his objection to the Intervenors' motion, Mr. Howard notes that the Court had earlier expressed a preference to wait until the end of the case to resolve the question of sanctions arising from the Plaintiffs' motions for sanctions and to disqualify. *Blakeney Mem.* at 3. He turns to § 1927 and the interpretive case law. Citing *McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger*, 280 F.3d 26 (1st Cir. 2002) and *Cruz v. Savage*, 896 F.2d 626 (1st Cir. 1990), he argues that to establish a claim under § 1927, the movant must demonstrate vexatious conduct as that term is defined and, in applying § 1927, the court must apply an objective standard. *Id.* (quoting *Cruz*, 896 F.2d at 632). Mr. Howard also claims that the "Intervenors' failure to invoke Rule 11 is fatal to their motion." *Id.* Finally, he reviews each motion to reconsider, contending that each presented legitimate issues and noting that "[i]t is one thing for a motion to fail; it is quite another to prove that the motions were filed vexatiously and in bad faith." *Id.* at 6. Finally, in his surreply, Mr. Howard argues that with the exception of the motion to reconsider the order on the motion for preliminary injunction, none of the motions to

reconsider was governed by the standards for a motion to alter or amend judgment.  *Blakeney Surreply* at 3.

## II.   DISCUSSION

It is most unfortunate that this bitter and prolonged public controversy has devolved into recrimination and allegations of bad faith.  As reflected in its May 24, 2007 Order, the Court is determined to rule on the issues of law and not be diverted by the animosity that this unending flood of litigation has generated.  To this end, as with the prior Order, the Court defers final judgment, but to assist the parties in preparing for the sanctions hearing, it addresses specific legal issues.

### A.   Fed. R. Civ. P. 11 and 28 U.S.C. § 1927

Mr. Blakeney cites no authority for his contention that the failure to file under Rule 11 is fatal to a § 1927 motion and the Court is aware of none.  The proposition that if the movant does not make a procedural claim under Rule 11, he has waived a statutory right under § 1927 runs counter to the prevailing wisdom about the relationship between the rule and the statute.

Although there is no First Circuit authority directly on point, other circuits have ruled that the safe harbor provisions in Rule 11 do not apply to § 1927 claims.[3]  Thus, although Mr. Blakeney argues that "it would be neither fair nor just to permit a party to utilize 28 U.S.C. § 1927 to avoid Rule 11's 'safe harbor' requirement," *Blakeney Mem.* at 4, the Second Circuit in *Ted Lapidus* observed that "[s]ection 1927 contains no counterparts to the safe harbor and separate motion requirements of Rule 11." *Ted Lapidus v. Vann*, 112 F.3d 91, 96 (2nd Cir. 1997); s*ee also Macort v. Prem, Inc.,* 208 Fed. Appx. 781, 786 (11th Cir. 2006) ("Here, Budget's failure to give Macort the twenty-one day safe harbor period forecloses Rule 11 sanctions for the

---

[3]  The First Circuit commented that the differences between Rule 11 and § 1927 are slight.  *Obert v. Republic Western Ins. Co.*, 398 F.3d 138, 142 n.5 (1st Cir. 2005).  But, it has not ruled that in order to make a § 1927 claim, the movant must comply with the notice requirements of Rule 11.

initial filing of a frivolous suit. As a result, we can consider only whether § 1927 sanctions are merited by conduct following the initial filing of this suit."); *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1223 (10th Cir. 2006) ("We decline Gage's invitation to hold that due process is thwarted when § 1927 is invoked with 'other motions or requests,' Fed. R. Civ. P. 11(c)(1)(A), or when the offending party is not given a 'safe harbor' in which to avoid sanctions by withdrawing the challenged claim, Fed. R. Civ. P. 11 Advisory Committee's Note (1993 amendments).   In so declining, we join the Second Circuit in expressly recognizing that '[s]ection 1927 contains no counterparts to the safe harbor and separate motion requirements of Rule 11.'") (quoting *Ted Lapidus*, 112 F.3d at 96); *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004) ("The failure of a party to comply with the safe-harbor requirements affects only the district court's authority to impose sanctions requested by a party under Rule 11(c)(1)(A).   For example, failure to comply with the safe-harbor provisions would have no effect on the court's authority to *sua sponte* impose sanctions under Rule 11(c)(1)(B), to award costs pursuant to 28 U.S.C.A. § 1927, or to impose sanctions within its inherent power . . . ."); *Ridder v. City of Springfield,* 109 F.3d 288, 297 (6th Cir.1997) (stating that "[u]nlike Rule 11 sanctions, a motion for excess costs and attorney fees under § 1927 is not predicated upon a 'safe harbor' period").

The refusal to conflate the standards under Rule 11 and § 1927 is consistent with the view that the rule and the statute, though similar, are distinct.  *See Ted Lapidus*, 112 F.3d at 96 (stating that Rule 11 and § 1927 are not "identical in all respects").  In *International Board of Teamsters*, the Second Circuit found a number of "significant differences" between Rule 11 and § 1927:  (1) Rule 11 sanctions may be imposed on both counsel and client, while § 1927 applies only to lawyers; (2) a Rule 11 violation must be based on signed pleadings, while § 1927 does not hinge

on the presence of paper(s); (3) Rule 11 does not apply to obnoxious conduct during litigation, while § 1927 applies to unreasonable and vexatious multiplication of court proceedings and, (4) Rule 11 misconduct is measured as of the time the pleading was signed, while § 1927 invites attention to a course of conduct and imposes an ongoing obligation on attorneys to avoid dilatory tactics.[4]  *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345-46 (2d Cir. 1991).  The Court rejects Mr. Blakeney's claim that the movants waived a claim under § 1927 because they did not file under Rule 11.

### B.     The Section 1927 Standard

The First Circuit has explained that the measure of an attorney's conduct under the "multiplies the proceedings in any case unreasonably and vexatiously" standard is whether "an attorney's conduct in multiplying proceedings is unreasonable and harassing or annoying." *Rossello-Gonzalez v. Acevedo-Vila*, 483 F.3d 1, 7 (1st Cir. 2007) (quoting *Cruz*, 896 F.2d at 632).  An attorney may be penalized under § 1927 only when there is a "serious and studied disregard for the orderly process of justice."  *Id.* (quoting *United States v. Nesglo*, 744 F.2d 887, 891 (1st Cir. 1984)).  At the same time, in *Cruz*, the First Circuit wrote that "while an attorney's bad faith will always justify sanctions under § 1927, we do not require a finding of subjective bad faith as a predicate to the imposition of sanctions."  *Cruz*, 896 F.2d at 631-32.  Thus, behavior is "vexatious" when it "is harassing or annoying, regardless of whether it is intended to be" and the attorney "need not intend to harass or annoy by his conduct nor be guilty of conscious impropriety to be sanctioned."  *Id.* at 632.  But, the attorney's conduct must "be more severe than mere negligence, inadvertence, or incompetence."  *Id.*  In assessing whether an

---

[4] *International Board of Teamsters* mentions one difference between the rule and the statute that the First Circuit does not recognize.  The Second Circuit states that Rule 11 requires only a showing of objective unreasonableness on the part of the attorney; whereas, § 1927 requires subjective bad faith by counsel.  *Int'l Bhd. of Teamsters*, 948 F.2d at 1345-46.  The First Circuit does not require subjective bad faith under § 1927.  *Cruz*, 896 F.2d at 631-32.

attorney's conduct merits a § 1927 sanction, the trial court "should apply an objective standard." *Id.*

## C.    Motions for Reconsideration

Motions for reconsideration are poorly named.  The title suggests that whenever a litigant is disappointed, he is free to ask the court to mull it over again, this time favorably to his position, presumably on the theory that by mere repetition – perhaps raising the level of rhetoric – the court will see it his way.  This view of a motion to reconsider is erroneous.  Right or wrong, the trial court has made its decision; unless it has committed an error of law so obvious that it must be corrected or the movant has discovered a new fact that compels a different result, the parties must accept the court's ruling, adjust their arguments accordingly, and seek vindication on appeal.

The standard for a motion for reconsideration under Rules 59 and 60 is not reasonably in dispute: to succeed, the movant must "demonstrate that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law." *Palmer v. Champion Mortgage*, 465 F.3d 24, 30 (1st Cir. 2006); *Global Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 25 (1st Cir. 2007) ("As a general matter, a motion for reconsideration may only be granted if the original judgment evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations."); United States District of New Hampshire Local Rule 7.2(e) ("A motion to reconsider an interlocutory order of the court . . . shall demonstrate that the order was based on a manifest error of fact or law . . . ."). The First Circuit has noted that a motion for reconsideration is "an extraordinary remedy which should be used sparingly."  *Palmer*, 465 F.3d. at 30 (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995)).  The *Palmer* Court further observed that

"[u]nless the court has misapprehended some material fact or point of law, [a motion for reconsideration] is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." *Id.* None of the Plaintiffs' five motions for reconsideration that the Court denied came close to meeting the *Palmer* standard.

Mr. Blakeney responds variously. First, he persists in disputing the correct standard generally applicable to a motion for reconsideration. Mr. Blakeney simply ignores the Court's earlier orders and insists that a motion to reconsider is no more than a motion asking the court to "consider again." *Pls.' Mem.* at 12. It appears that Mr. Blakeney maintains his singular belief that a motion to reconsider is nothing more than its title suggests and that he can move for reconsideration simply because he disagrees with the ruling, not because the order contained a manifest error of law or fact, or alternatively, a manifest error of law or newly discovered evidence.

This Court does not have the last word on the law and for counsel to be utterly convinced that he is right on a point of law contrary to trial court rulings can be admirable. But, once the trial court has set forth the standards against which future motions will be measured, an astute lawyer should at least facially address those standards, rather than the ones he is persuaded are correct. Persistence in the face of repeated rulings can be mere obstinacy. *See Cruz v. Savage*, 691 F. Supp. 549, 556 (D.P.R. 1988), *aff'd* 896 F.2d 626 (1990) ("[T]here is a point beyond which zeal becomes vexation, the 'novel' approach to a legal issue converts to frivolity and steadfast adherence to a position transforms to obdurateness.").

As a fallback, Mr. Blakeney and Mr. Howard maintain that these standards, though correctly stated, apply only to Rule 59 or Rule 60 motions. *Blakeney Surreply* at 6-7. They assert that *Palmer* governed only one of the Plaintiffs' motions for reconsideration, and New

12

Hampshire's Local Rule 7.2(e) controlled the rest.  Plaintiffs' argument is misguided.  First, the Court is not convinced that *Palmer* and Local Rule 7.2(e) create substantively different standards.[5]  Second, the Court informed the parties in its Order dated May 14, 2007 that it considered a motion for reconsideration "an extraordinary remedy" limited to "new evidence" or the need to correct a "clear error of law or to prevent manifest injustice."  *Order on Pls.' Am. Mot. for Partial Recons. of Order on Pls.' Mot. to Complete the Administrative R*.  Despite the Court's clear statement, the Plaintiffs filed two more motions for reconsideration without addressing the standard the Court ruled it would apply.  *See Pls.' Mot. to Reconsider Order on Pls.' Mots. for Leave to Am. Compl*.  To be clear, whether the Court is correct on the appropriate standard for a motion for reconsideration is not directly at issue; rather, the question is whether, in view of the Court's rulings, the Plaintiffs' repeated motions for reconsideration violated § 1927.

---

[5] There is a subtle difference in the language in *Palmer* and in the local rule.  The Local Rule requires a "manifest error of fact or law" and *Palmer* requires "newly discovered evidence . . . or a manifest error of law."  United States District of New Hampshire Local Rule 7.2(e); *Palmer*, 465 F.3d at 30.  While *Palmer* does not include the term "manifest error of fact," several other cases from the First Circuit contemplate a manifest error of fact as grounds for a motion for reconsideration.  *See Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005) (citing 11 Charles Alan Wright & Charles H. Koch, Jr., Federal Practice & Procedure § 2810.1 (2d ed.1995) as noting four grounds for granting such a motion: manifest errors of law or fact, newly discovered or previously unavailable evidence, manifest injustice, and an intervening change in controlling law); *Zukowski v. St. Lukes Home Care Program*, 326 F.3d 278, 282 n.3 (1st Cir. 2003) ( "Under Fed. R. Civ. P. 59(e), a court may alter or amend a judgment based on a 'manifest error of law or fact' or newly discovered evidence.") (quoting *Aybar v. Crispin-Reyes*, 118 F.3d 10, 16 (1st Cir. 1997)).  In addition, if there were an error of fact so obvious that is manifest, it could constitute an error of law.  Further, *Palmer* itself contemplates that an error of fact would be pertinent in a motion for reconsideration.  *Palmer*, 465 F.3d at 30 ("Unless the court has misapprehended some material fact or point of law, such a motion is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected.").  Finally, in applying the language "manifest error of fact" instead of "newly discovered evidence," the local rule does not appear to intend to eliminate consideration of newly discovered evidence.  If newly discovered evidence were made the basis for a motion, it would presumably be considered a manifest error of fact within the meaning of the local rule.  *See, e.g. Dartmouth Hitchcock Clinic v. U.S. Life Ins. Co.*, No. 99-588-M, 2001 U.S. Dist. LEXIS 21874, at *4-5 (D.N.H. Dec. 31, 2001).  In any event, if there is a substantive variation between *Palmer* and Local Rule 7.2(e), it does not make a difference for purposes of the motions for reconsideration in this case.

D.       **The Underlying Federal Lawsuit**

Perhaps underpinning the motions for sanctions and the increasingly acrimonious nature of the dispute is the parties' growing conviction that the merits of Phase II of the Northwest Bypass have been litigated beyond the point of exhaustion.  An argument can be made that the multiple layers of review have imposed unnecessary costs and delays in this publicly-supported project, but this is a policy argument beyond this Court's ken.  The legal backdrop of this lawsuit presents legal issues of unusual complexity, requiring extensive research and extended decisions.

In general, the Court does not view the Plaintiffs' multiple theories of legal error that are set forth in the Complaint as either frivolous or in bad faith.[6]  This lawsuit highlights the bewildering array of environmental, historical, and administrative laws that touch on a project like the Northwest Bypass.  If these statutes are to be rationalized and streamlined, it is the constitutional responsibility of Congress to do so; it is not for this Court, especially in the context of a motion for sanctions, to penalize litigants who, relying on complex federal statutes, have raised complex arguments.  Moreover, the Court assumes that Congress enacted these laws to protect essential substantive and procedural rights and the Court's review of the merits of the motions for sanctions is guided by the imperative not to discourage citizens from resorting to federal court to call upon the protections of federal law.

E.       **The Merits of the Serial Motions for Reconsideration**

1.       **The First Motion for Reconsideration**

The first motion for reconsideration asked the Court to revisit its temporary restraining order.  *Northwest Bypass Group I*, 453 F. Supp. 2d at 333; *Pls.' Mot. to Reconsider Order on Pls.' Mot. for TRO*; *Addendum to Pls.' Mot. to Reconsider Order on Pls.' Mot. for TRO*.  The

---

[6] The one exception is Mr. Blakeney's unsupported allegations of unethical and criminal conduct by the city.  *See Order on Pls.' Mot. for Sanctions and Mot. to Disqualify Counsel*.

14

Court summarily addressed this motion in a footnote in its Order on the motion for preliminary injunction. *Northwest Bypass Group II*, 470 F. Supp. at 35 n.5.  Standing alone, the first motion for reconsideration would not be sanctionable.[7]

> 2.      **The January 2007 Motions to Reconsider and Resulting Order**

> a.      **The Second and Third Motions to Reconsider**

Two more motions for reconsideration followed immediately:  one challenging the Court's ruling on the preliminary injunction and the second questioning the Court's order on Plaintiffs' motion to complete the administrative record.  *Pls.' Am. Mot. to Reconsider Order on Pls.' Mot. for Preliminary Inj.*; *Pls.' Am. Mot. for Partial Recons. of Order on Pls.' Mot. to Complete the Administrative R. and Mot. for Leave to File a Reply*.  These motions drew increasingly prominent objections from the respondents; their objections focused not only on the merits, but also on the Plaintiffs' failure to address the legal standards for such a motion.

> b.      **The May 14, 2007 Order on the January 2007 Motions to Reconsider**

In response to the two January 2007 motions to reconsider, the Court issued its May 14, 2007 Order, which explained in detail the extraordinary nature of a motion for reconsideration and its limited applicability.  *Order on Pls.' Am. Mot. for Partial Recons. of Order on Pls.' Mot. to Complete the Administrative R.* at 2-3.  As of May 14, 2007, the Court had unequivocally set forth the standard it would apply to future motions for reconsideration.

---

[7] The motion did not raise manifest errors of law or fact.  It did attempt to place new evidence before the Court.  The Plaintiffs also noted that the motion for preliminary injunction was pending, the resolution of which would require the Court to address many of the same issues, and the Plaintiffs observed that the motion to reconsider served a "dual purpose."  *Pls.' Mot. to Reconsider Order on Pls.' Mot. for TRO* at 1 n.1.  Although the Corps cited Local Rule 7.2 in objecting to the motion, this first motion for reconsideration seemed innocuous and the Court's Order did not address the question of the proper standard.

### 3.    The Post-May 14, 2007 Motions for Reconsideration & Orders

After the Court's May 14, 2007 explanation, the Plaintiffs filed two more motions for reconsideration.  The first, on June 4, 2007, concerned leave to amend the complaint, and the second, on June 6, 2007, regarded the Plaintiffs' motion for sanctions and to disqualify counsel.

### a.    The June 4, 2007 Motion for Reconsideration

In view of the Court's two earlier rulings, the Plaintiffs' June 4, 2007 motion to reconsider the May 18, 2007 Order was ill-advised.  But, at least, the motion cited Local Rule 7.2(e) and argued that the Court misapplied Rule 16 and should have applied Rule 15.  The motion could be construed – if generously – as making a case that the Court committed a manifest error of law.  *Pls.' Mot. to Reconsider Order on Pls.' Mot. for Leave to Amend Compl.*

### b.    The June 5, 2007 Order on Reconsideration

On June 5, 2007, the Court issued another Order, focusing for a second time on the standards for a motion for reconsideration and dispatching the Plaintiffs' argument regarding the Court's earlier refusal to issue a preliminary injunction.  *Order on Pls.' Am. Mot. for Partial Recons. of Order of Pls.' Mot. for Prelim. Inj.* at 2-4.  At this point, the Court had stated and restated the standards applicable for a motion for reconsideration.

### c.    The June 6, 2007 Motion for Reconsideration

In view of the May 14, 2006 and June 5, 2006 Orders, to file a motion for reconsideration on June 6, 2007, was audacious.  *Mot. for Partial Recons. and to Clarify Order on Pls.' Mot. for Sanctions and Mot. to Disqualify Counsel.*  Admittedly, the Court has been baffled by the part of the motion that sought to increase the number of plaintiffs subject to sanction, but does not consider this aspect of the motion sanctionable under 28 U.S.C. § 1927.

The remainder of the motion did not begin to comply with the legal standards applicable to a motion for reconsideration.  The motion made no mention of the standards under which the Court had repeatedly said it would judge a motion for reconsideration.  Next, the Plaintiffs asked that the Court "reconsider continuing to consider imposing sanctions against the Tuttles (or any other plaintiffs)."  *Id.* at 2.  In support, the motion simply points out that in moving for sanctions, the Tuttles were relying on the advice of counsel.  But, the motion cites no law to the effect that a party who relies on the advice of counsel is immune from sanction, much less that the imposition of such a sanction would be a manifest error of law.  Finally, to the extent the motion asks the Court to revisit who should be sanctioned, the Court had stayed "any further decision regarding the appropriateness of imposing sanctions against Morton and Carolyn Tuttle and/or their counsel, Gordon R. Blakeney."  *Order on Pls.' Mot. for Sanctions and Mot. to Disqualify Counsel* at 16.  Thus, the motion asked the Court to reconsider a decision it had not yet rendered.

**F.    Summary:  Motions for Reconsideration**

The Court concludes that the motions for sanctions deserve a more complete airing. Because the Court is scheduling a hearing to determine whether to impose sanctions on the Plaintiffs' motion for sanctions and to disqualify, the Court will set these motions to be heard at the same time.  Guided by the Court's decision, counsel should be prepared to address the following:

(1)    Whether any of the motions for reconsideration standing alone, particularly the June 6, 2007 motion for reconsideration, violate the standards of § 1927; and,

(2)    Whether the accumulation of motions, including the motions to amend complaint, violates the standards of § 1927.

17

**III.    CONCLUSION**

The Court DEFERS final ruling on the city of Concord's Motion for Sanctions (Docket # 153) and the Intervenors' Motion for Sanctions (Docket # 160) and ORDERS these motions scheduled for hearing at the same time as the hearing which it will hold pursuant to its Order dated May 24, 2007.  The Court DENIES the Plaintiffs' request for sanctions (Docket # 159), and GRANTS the Intervenors' Motion to Clarify their Motion for Sanctions (Docket #161).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE
SITTING BY DESIGNATION

Dated this 22nd day of April, 2008